IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  08-cv-00436-WYD-KMT

PAMELA HURST,

      Plaintiff,

v.

RAMADA STERLING, conducting business in Colorado under the name Ramada
Sterling; and
NOBLE HOSPITALITY, INC., a Missouri company conducting business in Colorado,

      Defendants.

---

## ORDER

---

I.     INTRODUCTION

     THIS MATTER is before the Court on Defendant's Motion for Summary

Judgment, filed March 2, 2009 [#45]; Defendant's Motion to Strike Portions of the

Materials Submitted with Plaintiff's Response to Defendant's Motion for Summary

Judgment Pursuant to Fed. R. Civ. P. 12(f) and 56(e), filed April 6, 2009 [#55]; and

Plaintiff's Motion to Strike Defendant's Supplemental Authority, filed June 1, 2009 [#69].

II.     BACKGROUND

     In this employment discrimination case, Plaintiff asserts claims for sexual

harassment based on hostile work environment and retaliation in violation of Title VII of

the Civil Rights Act of 1964.  Voluminous facts have been asserted by both parties in

connection with the summary judgment motion and briefing.  I will briefly summarize

those facts which I deem pertinent to my ruling.  I have, however, construed all of the

facts in the light most favorable to Plaintiff as I must for purposes of this summary

judgment motion.  *See Carolina Cas. Ins. Co. v. Yeates*, 533 F.3d 1202, 1204 (10th Cir.

2008).

In 2002, Ramada Inn and Country Kitchen in Sterling, Colorado ("Ramada

Sterling"), hired Plaintiff as a maintenance worker, a position she held for a period of

about four months after which she resigned from her employment.  At the time of her

hire, Plaintiff was given a copy of Ramada Sterling's employee handbook, and signed

an acknowledgment agreeing to abide by Ramada Sterling's policies.  In October 2003,

Ramada Sterling's Front Desk Manager, Randy Huston, hired Plaintiff into the part-time

position of Front Desk Clerk.  Shortly thereafter, Plaintiff contends she began to observe

Mr. Huston touching his pants (or his pants pocket) with his fingers on one hand in the

region of his genital area.  Plaintiff contends that at that time she thought Mr. Huston's

gestures were disgusting, but did not believe his conduct constituted sexual

harassment.

In May 2004, Plaintiff was promoted to the full-time position of Sales Manager,

and began reporting directly to Lana Hahn, the General Manager of the Ramada

Sterling.  Generally, Plaintiff was to work from approximately 8:00 a.m. to 4:00 p.m., but

had to adjust her hours during the day if she worked evenings and weekends as she

was not allowed to exceed 40 hours per week.  Plaintiff had her own office with locking

front and back doors.  Mr. Huston's desk was in a large back office that also contained

the fax machine, printer and copier used by Plaintiff, and could be accessed through the

back door of Plaintiff's office.  Maintenance workers, housekeepers and other employees, including Plaintiff and Ms. Hahn, routinely walked in and through the back office for various reasons.  The maintenance manager and housekeeper also had desks in the back office.

Throughout 2004, Plaintiff continued to observe Mr. Huston touching his pants in his genital area with one hand (sometimes with his hand in his pocket and sometimes with his hand outside of his pocket) for a few seconds at time, two or three times per week.  However, Plaintiff testified during her deposition that, at that time, she did not think Mr. Huston's conduct was done on purpose, and she did not feel threatened by this behavior.  Hurst Depo. At 32:6-14; 33:15-34:1.

Beginning in August 2005, Plaintiff began to perceive Mr. Huston's gestures to be for his own sexual excitement.  At this time, Plaintiff did not complain about Mr. Huston's gestures to her supervisor, Ms. Hahn, as required by company policy, nor did she inform the regional manager or vice president of operations that she found Mr. Huston's conduct offensive.  Plaintiff contends that sometime during late August, early September, 2005, she contacted Deb Hill, the accountant for Ramada Sterling, and complained about Mr. Huston's gestures.  According to Plaintiff, Ms. Hill then contacted Ms. Hahn who enlisted the maintenance manager, Jim Bartnik to speak with Mr. Huston about his behavior.  Pl. Aff. at ¶¶ 34-36.  The date on which Plaintiff first spoke directly to Ms. Hahn about Mr. Huston's behavior is disputed.  In her deposition, Plaintiff stated that she had a conversation with Ms. Hahn and Ms. Hill in November 2005 or December 2005, during which they informed her that Mr. Bartnik and Ms. Hahn had spoken with

Mr. Huston about his behavior, but she then admitted that she was unsure about the dates. Hurst Depo. at 39:3-20. Ramada Sterling contends that the first time Plaintiff complained about Mr. Huston directly to Ms. Hahn was during a meeting between Plaintiff and Ms. Hahn on January 9, 2006 and that following this meeting Ms. Hahn asked Mr. Bartnik to speak with Mr. Huston. Hahn Aff. at 55:1-14.

In any case, the parties agree that in December 5, 2005, Ms. Hahn met with Plaintiff and gave her a document entitled "Minimum Standards," which Plaintiff signed. Hahn Depo. at 18:4-18; Exhibit A-8. The Minimum Standards document states, among other things, that Plaintiff was to arrive at work prior to 8:15 a.m. every day in order to submit her daily report to the corporate office by 9:00 a.m., and that if Plaintiff was unable to be at work or was going to be late for any reason, she must attempt to contact Ms. Hahn. Hahn Depo. at 27:16-28:5; Exhibit A-8. The Minimum Standards document further states that the duties described therein were a portion of Plaintiff's job duties and that if she failed to complete any of these tasks should could be disciplined up to and including termination from employment. Exhibit A-8.

It is undisputed that Plaintiff was absent from work on January 5 and 6, 2006, and that she did not contact Ms. Hahn to inform her that she would be absent. On Monday, January 9, 2006, Plaintiff met with Ms. Hahn and Ms. Hill to discuss her failure to call in. The parties agree that during this meeting Plaintiff complained to Ms. Hahn about Mr. Huston's conduct. Following the meeting Ms. Hahn asked Mr. Bartnik to speak with Mr. Huston. Mr. Bartnik and Mr. Huston met, and Mr. Barnik informed Mr. Huston of complaints about him scratching himself in the groin area. Mr. Huston told

Mr. Bartnik that he was not conscious of his conduct, but would attempt to stop.

Plaintiff was again absent from work on January 26, 2006. The parties dispute whether Plaintiff called in to inform Ms. Hahn of her absence. Plaintiff contends she called Ms. Hill on January 26, 2006 and left a message for Ms. Hill and Ms. Hahn stating that she was ill and going to the doctor that day. Plaintiff and Ms. Hahn met on January 27, 2006, and during this meeting Ms. Hahn informed Plaintiff that Mr. Bartnik spoke with Mr. Huston about his conduct.

Plaintiff missed work from April 10-13, 2006. When Plaintiff returned to work on April 14, 2006, Ms. Hill gave Plaintiff a "write-up" over Plaintiff's unsatisfactory job performance based on Plaintiff's failure to prepare invoices for various events occurring during her absence. Plaintiff admits she missed work, but disputes that she was to have invoices prepared in advance. Also on April 14, 2006, Plaintiff delivered a letter to Ramada Sterling in which she filed a request for workers' compensation due to job-related stress caused by Mr. Huston's conduct. That same day, Ms. Hahn personally spoke to Mr. Huston about his conduct and asked him to stop scratching himself in the groin area, gave him a written counseling, which he signed, and instructed Mr. Huston to communicate with Plaintiff over the telephone if he had to speak with her for any work related business. Ms. Hahn further instructed Mr. Huston to leave the back office and go to the front desk whenever Plaintiff entered the back office for any reason. Ms. Hahn then met with Plaintiff and informed her that she was to communicate with Mr. Huston by telephone for any work-related business. During this meeting, Ms. Hahn asked Plaintiff if she believed this solution would solve her problems with Mr. Huston and

Plaintiff stated that she thought it would.  On April 17, 2006, Ms. Hahn contacted

Plaintiff and asked her whether the arrangement with Mr. Huston made her feel

comfortable and Plaintiff said yes.  Plaintiff admitted in her deposition that she cannot

recall any occasion after April 17, 2006 when Mr. Huston offended her by touching his

genitals.  Hurst Depo. 106:16-25.

On April 26, 2006, Plaintiff left a voice-message for Ms. Hahn stating she would

be in for work when she was feeling better.  Plaintiff did not come in to work on April 26,

2006, or April 27, 2006.  Plaintiff did not call into to work the morning of April 27, 2006,

but sometime mid-afternoon she called Ms. Hahn to explain she was ill.  The parties

vigorously dispute whether during this conversation Plaintiff quit or whether Ms. Hahn

told her not to return to work.

III.    ANALYSIS

Plaintiff alleges two substantive claims for relief based on sexual harassment and

retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*.

Ramada Sterling has moved for summary judgment with respect to both claims.

A.    Summary Judgment Standard

Summary judgment may be granted where "the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and the ... moving party is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The burden of showing that no genuine issue of material fact exists is borne by

the moving party.  *E.E.O.C. v. Horizon/ MS Healthcare Corp.*, 220 F.3d 1184, 1190

(10th Cir. 2000).  Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead bring forward "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In reviewing a summary judgment motion, the court must view the evidence in the light most favorable to the nonmoving party.  *Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584, 590 (10th Cir. 1999).  All doubts must be resolved in favor of the existence of triable issues of fact.  *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

B.    <u>Hostile Work Environment Claim</u>

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  In order to establish the existence of a sexually hostile work environment, a plaintiff must demonstrate: (1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition or privilege of the plaintiff's employment and created an abusive working environment.  *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 1007).  However, even if a plaintiff satisfies these elements, he or she must also identify a basis for holding the employer liable under Title

VII.  *Harsco*, 475 F.3d at 1186; *see also Tademy v. Union Pacific*, 520 F.3d 1149, 1157

(10th Cir. 2008) (employers are not automatically liable under Title VII for the conduct of

employees that creates a hostile work environment).

An employer may be subject to respondeat superior liability for an actionable

hostile work environment created by a supervisor with immediate authority over the

employee.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington*

*Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *see also McInnis v. Fairfield*

*Communities, Inc.*, 458 F.3d 1129, 1136 (10th Cir. 2006).  In addition, an employer may

be liable for co-employee harassment under a negligence theory by "failing to remedy or

prevent a hostile or offensive work environment of which management-level employees

knew, or in the exercise of reasonable care should have known."  *Adler v. Wal-Mart*

*Stores, Inc.*, 144 F.3d 664, 673 (10th Cir. 1998).

Here, there are no allegations in the pleadings or in the response to the motion

for summary judgment that suggest that Mr. Huston was Plaintiff's supervisor at the time

she began to perceive his behavior as harassment, or that Plaintiff is attempting to

establish Ramada Sterling's liability under a respondeat superior theory.  Plaintiff's only

allegations with respect to Ramada Sterling's liability is her assertion that Ramada

Sterling "acquiesced to the sexual harassment and gender-based hostile work

environment," and that "Defendant failed to assist and/or attempt to rectify the

discrimination, differential treatment, hostile employment environment . . . ."  Complaint

at ¶¶ 31-32.  Therefore, Ramada Sterling will be liable for Mr. Huston's alleged

harassment if it had actual or constructive knowledge of the hostile work environment

but did not adequately respond to notice of the harassment. *Harsco*, 475 F.3d at 1186 (citing *Adler*, 144 F.3d at 673). Actual knowledge is demonstrated where the plaintiff has reported harassment to management-level employees. *Adler*, 144 F.3d at 673. The employee bears the burden of showing that the employer did not adequately respond to notice of the harassment. *Scarberry v. Exxonmobile Oil Corp.*, 328 F.3d 1255, 1258 (10th Cir. 2003) (quoting *Adler*, 144 F.3d at 673). The test for the adequacy of an employer's remedial response is "whether the remedial and preventative action [is] reasonably calculated to end the harassment." *Alder*, 144 F.3d at 676. "Thus, the focus is not on whether the employer is liable for the bad acts of others, but whether the employer itself is responsible for failing to intervene." *Hollins v. Delta Airlines*, 238 F.3d 1255, 1258 (10th Cir. 2001).

In its motion for summary judgment, Ramada Sterling contends, among other things, that Plaintiff cannot establish that it failed to take appropriate remedial action with respect to Mr. Huston's behavior once that behavior was reported to Plaintiff's supervisor, Ms. Hahn. While Plaintiff bears the burden of demonstrating that Ramada Sterling did not adequately respond to her complaints of harassment, Plaintiff's response to the motion for summary judgment does not include any argument in response to Ramada Sterling's assertion that it took appropriate remedial action following her complaints. While Plaintiff repeatedly asserts that she has demonstrated that she was subjected to sexual harassment from Mr. Huston, she fails to articulate the basis for Ramada Sterling's liability for this alleged harassment, nor does she explain why Ramada Sterling's response to her complaints of harassment were unreasonable.

Although the parties dispute the date that Plaintiff first spoke with Ms. Hahn about the harassment, there is no dispute that following each of Plaintiff's complaints, Ms. Hahn took corrective action.  Construing the facts in the light most favorable to Plaintiff, Plaintiff complained to Ramada Sterling about Mr. Huston's conduct on three occasions.  First, Plaintiff contends that sometime in August or September of 2005, she complained to Ms. Hill, who was not her supervisor, and Ms. Hill then relayed the complaint to Ms. Hahn.  Construing the facts in the light most favorable to Plaintiff, Ms. Hahn responded to Plaintiff's initial complaint of harassment by informing Plaintiff in November 2005 that she asked Mr. Barnik to speak with Mr. Huston.  Next, the parties agree that after Plaintiff complained to Ms. Hahn during a meeting that took place on January 9, 2006, Ms. Hahn again asked Mr. Bartnik to speak with Mr. Huston.  Finally, on April 14, 2006, after Plaintiff filed a formal request for workman's compensation based on Mr. Huston's conduct, Ms. Hahn personally spoke to Mr. Huston about his conduct and asked him to stop scratching himself in the groin area, gave him a written counseling, which he signed, and instructed Mr. Huston to communicate with Plaintiff over the telephone if he had to speak with her for any work related business.  Ms. Hahn further instructed Mr. Huston to leave the back office and go to the front desk whenever Plaintiff entered the back office for any reason.

While Plaintiff states in her statement of disputed facts that she did not believe that the separation from Mr. Huston solved the problem because the office equipment she needed was right by his desk, it is undisputed that when Ms. Hahn asked Plaintiff if she believed this solution would solve her problems with Mr. Huston, Plaintiff stated to

Ms. Hahn that she thought it would.  It is also undisputed that on April 17, 2006, Ms. Hahn contacted Plaintiff and asked her whether the arrangement with Mr. Huston made her feel comfortable and Plaintiff said yes.  Plaintiff admitted in her deposition that she cannot recall any occasion after April 17, 2006 when Mr. Huston offended her by touching his genitals.  Hurst Depo. 106:16-25.  There is nothing in the record that indicates that the remedial measures Ramada Sterling put in place on April 14, 2006, did not end the alleged harassment.  The Tenth Circuit has found that "[a] stoppage of harassment shows effectiveness," which in turn is evidence of the reasonableness of the employer's response to the harassment.  *Adler*, 144 F.3d at 676.  Again, it is Plaintiff's burden to demonstrate that her employer's response was unreasonable. Even assuming Plaintiff could prove that she was subject to a sexually hostile work environment, there is no evidence in the record that Ramada Sterling unduly delayed in its response to Plaintiff's complaints, or that its responses were not reasonably calculated to end the alleged harassment.  In the absence of any argument from Plaintiff that Ms. Hahn's response to her complaints was somehow unreasonable, and in light of the fact that Ms. Hahn's actions following Plaintiff's third complaint resulted in an end to the alleged harassment, I find that Plaintiff has failed to demonstrate that Ramada Sterling is liable for the alleged harassment.  *Adler*, 144 F.3d at 673 (10th Cir. 1998).

Because Plaintiff has failed to demonstrate that Ramada Sterling is liable for the alleged harassment, I need not address Ramada Sterling's arguments that the alleged harassment was not based on sex and that it was not sever or pervasive enough to alter a term, condition or privilege of the Plaintiff's employment.

C.    Retaliation Claim

In addition to prohibiting sexual harassment, Title VII contains an anti-retaliation provision which forbids employer actions that 'discriminate against' an employee because [s]he has 'opposed'" a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006); *Pinkerton v. Colorado Dept. of Trans.*, 563 F.3d 1052, 1064 (10th Cir. 2009).  In order to establish a prima facie case of retaliation after *White*, "a plaintiff must demonstrate (1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Jencks v. Modern Woodmen of America*, 479 F.3d 1261, 1265 n.3  (10th Cir. 2007).

The second element can be proved showing that the actions "'might well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *White*, 548 U.S. at 68 (quotations omitted).  "[T]he  significance of any given act of retaliation will often depend upon the particular circumstances."  *Id.* at 69. "Context matters."  *Id.*  The Tenth Circuit has clarified since *White* that the plaintiff need not prove "some tangible, subjective psychological or monetary injury."  *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1090 (10th Cir. 2007).  However, the Supreme Court in *White* spoke of "*material* adversity because we believe it is important to separate significant from trivial harms."  *White*, 548 U.S. at 68.  Title VII "does not set forth 'a general civility code for the American workplace.'"  *Id.* (quotation omitted).  "An

employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.*

As to the third element, a causal connection "'may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct followed by adverse action.'" *Conner v. Shnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (quoting *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1983)). "Unless the termination is very closely connected in time to the protected conduct, the plaintiff will need to rely on additional evidence beyond temporal proximity to establish causation. *Id.* (4 month time lag between plaintiff's participation in protected activity and his termination is not itself sufficient to justify an inference of causation or the causal element, citing cases).

Defendant contends that Plaintiff cannot show the existence of any material facts with respect to any of the elements of her retaliation claim. In her response to the motion for summary judgment, Plaintiff articulated five separate retaliatory actions; only the fifth rises to the level of "material adversity" as a matter of law. The first adverse action Plaintiff complains of is the December 5, 2005, dissemination of the Minimum Standards memo. However, Plaintiff states in her Affidavit that she "did not consider the meeting on December 5, 2005 discipline or a warning," and that "[Ms.] Hahn told me she had never given me a job description, so she was giving me the Minimum Standards . . . [she] did not express she was unhappy with my work." Pl. Aff. at ¶ 8. Based on these representations, Plaintiff cannot now contend that the December 5,

2005, meeting was an "adverse action."  The second alleged adverse cited by Plaintiff is the discipline she received for her absences on January 5 and 6, 2006.  Inexplicitly, in the same sentence of her response brief, Plaintiff admits that those absences did not form the basis for any discipline.  Rsp. to Mtn. Sum. J. at 29.  The third and fourth incidents involve a series of "write ups" Plaintiff received for failing to call-in sick on January 26, 2006 and April 5, 2006, and for failing to turn in invoices from the previous weekend while Plaintiff was absent on April 10-13, 2006.  Plaintiff concedes that she was unaware of the April 5, 2006 "write up."  Moreover, Plaintiff does not explain the significance of the other "write ups" and based on the record before me, I find that the "write ups" do not constitute a "material" adverse action under that would dissuade a reasonable employee from making or supporting a charge of discrimination.  *See White*, 548 U.S. at 68-69.

The fifth adverse incident alleged by Plaintiff is her termination on April 27, 2006. As discussed earlier, the parties dispute whether Plaintiff quit or was terminated. Construing the facts in the light most favorable to Plaintiff, genuine issues of material fact exist with respect to whether Plaintiff was terminated in retaliation for complaining of sexual harassment.  Because Plaintiff's most recent complaint of harassment occurred on April 14, 2006, when she filed her workers compensation claim, genuine issues of material fact exist with respect to whether Plaintiff engaged in protected opposition to discrimination on April 14, 2006, or earlier, whether she was in fact terminated on April 27, 2006, and whether a causal connection existed between the protected activity and the adverse action.  *See Jencks*, 479 F.3d at 1265 n.3.

-14-

Ramada Sterling contends, however, that even assuming Plaintiff can make out a prima facie case of retaliation in connection with her alleged termination on April 27, 2006, her claim is nevertheless precluded because Ramada Sterling would have been justified in terminating Plaintiff's employment on April 27, 2006, and Plaintiff cannot show that the termination is pretext for retaliation.  According to Ramada Sterling, Plaintiff had been having work performance problems throughout 2005, and that the April 27, 2006, absence was her third "no call no show" since Ms. Hahn provided her with the Minimum Standards document in December 5, 2005.  However, Ms. Hahn testified in an unemployment hearing that she would not have terminated Plaintiff for failing to call in on April 26 and for calling in very late on the April 27.  I find that it is impossible to resolve any issues related to pretext without first resolving the factual disputes surrounding the April 27, 2006, incident.  Therefore, I cannot conclude that Ramada Sterling has demonstrated the absence of any material facts with respect to Plaintiff's claim that she was terminated in retaliation for her sexual harassment complaint.

Finally, with respect to Plaintiff's motion to strike Defendant's supplemental authority, that motion shall be denied as moot.  To the extent Defendant's notice of supplemental authority contained any new argument, those arguments were not considered in resolving the motion for summary judgment.  In addition, Defendant's motion to strike portions of the materials submitted with plaintiff's response to the motion for summary judgment shall denied.  To the extent Plaintiff's Affidavit is inconsistent with her deposition testimony, it was not necessary to resolve those alleged

inconsistencies in ruling on the motion for summary judgment.  In addition, it was not

necessary to resolve Defendant's objections to portions of Howell Affidavit or

Grauberger Affidavits in ruling on the motion for summary judgment.

IV.     CONCLUSION

        Therefore, for the reasons set forth herein, it is hereby

        ORDERED that Defendant's Motion for Summary Judgment, filed March 2, 2009

[#45] is **GRANTED IN PART AND DENIED IN PART**.  Judgment shall enter in favor of

Defendant as to Plaintiff's First Claim for Relief for gender discrimination in violation of

Title VII.  Summary judgment is denied as to Plaintiff's claim for retaliation.  It is

        FURTHER ORDERED that Defendant's Motion to Strike Portions of the Materials

Submitted with Plaintiff's Response to Defendant's Motion for Summary Judgment

Pursuant to Fed. R. Civ. P. 12(f) and 56(e), filed April 6, 2009 [#55] is **DENIED**. it is

        FURTHER ORDERED that Plaintiff's Motion to Strike Defendant's Supplemental

Authority, filed June 1, 2009 [#69] is **DENIED AS MOOT**.

        Dated:  August 25, 2009

                                        BY THE COURT:


                                        s/ Wiley Y. Daniel_____
                                        Wiley Y. Daniel
                                        Chief United States District Judge